The 4th District Appellate Court of the State of Illinois has now convened the Honorable Robert J. Steigman presiding. Thank you, Mr. Bailiff. Our argument for this morning is in case number 4-25-034. To raise detention of Morris, I'd ask counsel for the appellant to please state your name, sir. My name is Jason R. Vincent, Your Honor. Thank you. And counsel, for the appellees, please state your name for the record as well. Elizabeth Bays. Last name spelled B-A-Y-S. Thank you. It's pronounced Bays? That's correct. Thank you. Okay. Then, Mr. Vincent, on behalf of the appellant, you may begin your argument at this time, sir. Thank you, Your Honor. Good morning, Your Honor and counsel. May it please the court, my name is Jason R. Vincent, and I'm appearing on behalf of Gregory Morris, the appellant in this matter. The issue presented in my brief is singular in that the court erred in granting the state's motion for no probable cause. The parties in their individual briefs agree that the standard of review on this particular issue is de novo. Your Honors, the statement of facts are presented in both of our briefs. Very briefly, Mr. Gregory Morris was committed as a sexually violent person in May of 1999, and he has resided not in the prison since that time, but in the facility in Rushville. He has had periodic evaluations and examinations, and we find ourselves in this particular matter, him having been before this court before, dealing with the hearings that occur on a hearing for no probable cause on December 2 of 2024 and in February of 2025. The case was heard before Judge Wessel in Cass County. This particular instance, both sides had experts at the hearing in both December and in February, the court having previously granted Mr. Morris the ability to acquire an independent expert, that being a Dr. Louis Rozelle. For the state, it was an individual named Dr. Lindsay Dees. Lindsay Dees testified at the December 2 hearing that it was her opinion that the respondent was not ready for discharge or conditional release, and that respondent suffers from sexual sadism disorder and narcissistic personality disorder. It was her opinion that the respondent had not made sufficient progress in treatment, and that he continues to be a sexually violent person. Dr. Rozelle, who you aforementioned, who had been appointed by Judge Wessel, testified that he had reviewed the report of Dr. Dees. Go ahead. I apologize. Dr. Rozelle, again, Dr. Morris' independent expert, testified that he disagreed with the diagnosis of Dr. Dees, and he believed that the respondent had progressed in treatment, and that he disagreed with Dr. Dees' scoring of the static 99. Dr. Dees, having used several different scoring methods to determine her determination, as opposed to the independent doctor who did not use all three statistical methods that he could have, Dr. Rozelle included a significant amount of research in his particular report, which shows that individuals in their 60s consistently have recidivism rate of 10% or less. In this particular case, Gregory Morris, I believe, is 62 or perhaps 63 right now. He was 61 when this brief was written, so I'm certain he's at least 62. The state, Dr. Rozelle, in her, sorry, in his examination, stated that he believed this respondent had progressed in treatment, and that he understands the factor which led to his prior offending. In this particular case, Your Honor, it's our argument that there's two primary factors in favor of him being able to have, him being granted the probable cause to proceed with the hearing. The first is his age. Again, he is 60, we'll say 62 years old, and the offense occurred in the 1990s, with him being committed in 1999 at an age of 35 years old. The second issue is, obviously he continues to age up, and there's not a specific date at which they release as far as he reached this plateau of 65 or 70, but at the same time, he has progressed in treatment. The doctor for the state did testify that he has gone from level two to level three of the five stages of treatment. I have a question. The trial court heard all of this testimony and the arguments based on that, and matter of fact, I think at the trial level, wasn't there a statement that the court had heard from a respondent, way more evidence and testimony than is typically presented at these hearings? In that regard, the court gave us its explanation for why it ruled as it did. Where, in your judgment, did the court go wrong? Where did it commit error? I believe it committed error, Your Honor, where I referenced it on page 14 of my briefs in the argument section, where the judge had said, I see nothing in this report that would support a finding of probable cause to initiate a further hearing and to possibly do as a release at this time. My concern was, and it's in our brief, when he says the release at this time, is he's sort of putting the cart before the horse in terms of there being a hearing on the issue, because the probable cause is not the determination of whether the individual is going to be released. It's if it goes forward to an evidentiary hearing. So I think he's making a determination before he should be making the determination, probable cause being this level as opposed to the next level as far as an evidentiary hearing. Let me ask a question. Did the independent examiner ever say that your client was no longer a sexually violent person? Judge, let me check that. I don't believe he specifically... Dr. Rozelle believes the respondent is ready to be conditionally released per the statute, and he stated that the respondent has progressed in treatment and understands the factors. I don't believe I could answer affirmatively to you that he definitely said this is the case at this point. Okay, that means then the answer is no. He never gave that determination. And then I have a second question point. Isn't it true that the state's examiner said that she believed that while he had made progress, it was apparent to her that his only concern was release, and that he did not really have or did not demonstrate a motivation to change, nor did he have a plan for how to change, nor did he have a support system that would help him change. Would that be also be correct? Those are all true, Your Honor. He has no support system, and she, for lack of a better way to describe it, she sort of described it as him going through the process as far as this is what I need to do for release as opposed to maybe taking into treatment in a meaningful fashion, I think would be a fair way to describe it. Given that answer, and given that the trial court valued or paid more heavily or favored her evidence as an examiner, what is there to talk about? Judge, I believe one can sort of, a judge is called upon to determine, okay, we got this person saying X, this person saying Y, who are they going to believe? And it is clear that they believed her, the state examiner over the independent examiner. I do believe there was evidence presented, though, that he has progressed in treatment from level 2 to level 3, and that level 3 is a time in some people, obviously not Mr. Morris's time, but other people have been released. Well, that's like saying that you got to get released at 60. I mean, the standard isn't whether he's in level 3. The standard, and then the standard is not whether he's made progress. The standard is sufficient progress. In this instance, to require a hearing, an actual hearing, and I just, I'm somewhat flummoxed at what your points are regarding why you think there should be a further hearing. Judge, it's contained in there is the age issue, and he has progressed. I agree that the state does not agree with that concept. We have an independent expert saying that he's ready to be conditionally released per the statute. That's what Dr. Rozelle had testified to. So, I guess as we often have, we have the competing experts, and the judge chooses which one to rely upon more than the other. I think in this particular case, with the judge saying, again, weighing whether or not he was going to be released at that time, sort of put a cart before the horse in terms of that would have been an issue at an evidentiary hearing. I guess that would be the primary concern as far as him taking the ability of a potential jury decision away from Gregory Morris as far as that particular issue. I guess it would be our primary concern or our primary issue that's contained, which I do admit it's not helped by the fact that the state expert was pretty clear in terms of her testing that he's not at the point where that should be happening. Thank you, counsel. I understand your position. You've answered my questions. If I may, counsel, Vincent, you fielded some really good questions, but in coming into this hearing, it seems to me with the de novo standard for you to achieve a result, there's got to be something weak or inappropriate about the evaluators D's findings. Is there anything there that is a part of your argument? Because otherwise, we've got the court having weighed the credibility and you've got factors in both instances, but they've made the call in favor of the courts made the call in favor of the credibility of D. So is there anything about D's findings that you have an issue with or can argue to us is a problematic situation? Judge, the only issues I would have is what Dr. Rozelle had testified to as far as her decision to use the static 99 or her decision to use these things are not necessary. But in the global thing of her assessment, I have no issues to say that she did anything wrong or did anything incorrect or should have done things differently. It seems to have been done thoroughly, and I guess Dr. Rozelle would say he went a slightly different path and maybe had a different decision. But it's not something I'm coming in and saying that Dr. D's did wrong in her report or created created facts that were not that were untrue. Thank you. Your Honor, I will yield my the remainder of my time at this point. Again, my arguments are the age issue and the fact that he is progressing. I don't think he's progressing as fast as what Dr. D's would like him to be doing or frankly, anybody involved with this particular case. But I believe that he was successful as far as the motion for no probable cause should not have been granted in the matter should have continued toward an evidentiary hearing. Nothing further. Thank you, Mr. Vincent. Ms. Bays, on behalf of the appellee, you may make your argument at this time. Good morning, Your Honors, and may it please the court. Assistant Attorney General Elizabeth Bays on behalf of the people. This this case presents a relatively narrow question of whether there was a sufficient change between respondents 2023 reexamination report and respondents 2024 reexamination report to believe that response to create probable cause to believe that respondent is ready for discharge. I do want to start by noting the scope of the inquiry here. The question for the court is not whether respondent is ready for conditional release in order for responded to be conditionally released. He needs to file a petition for conditional release, which he did not do during the 2024 cycle, and he has not filed an appeal from the denial of his 2023 petition for conditional release. So the question here is simply whether there is probable cause to believe he is ready for full discharge based on the 2024 report. The question is also not whether the December 2024 hearing produced probable cause, because that hearing was cabined to whether there was probable cause in 2023. The court ultimately found there was no probable cause as to the 2023 report and respondent has not appealed that finding. So, all of the conclusions presented by Dr Roselle, which were exclusively cabin to 2023 and exclusively cabin to whether respondent was ready for conditional release aren't really relevant to the inquiry today. The question is simply whether in 2024, where there was 1 report produced by Dr that report created probable cause to believe respondent is ready for full discharge. Now, that report produced the same conclusions as the 2023 report in every material category. Respondent was in the same phase of treatment in 2023 and 2024. Respondent had the same scores on the actuarial tests. Respondent produced scores in the same range in the dynamic factors test and respondent had the same overall well above average level of risk 3 to 4 times more likely than the average sex offender to reoffend. Because he produced those same category scores, there's no change between 2023 and 2024 that would produce probable cause to believe he is no longer an SVP. Now, I would like to briefly address counsel's age argument and counsel's progress and treatment argument. He was 60 in 2023 and 61 in 2024. This court's precedent in Tatelbach suggests that a simple difference in 1 year does not by itself produce probable cause to believe there's a change. And it is important again to note that we're looking at 2023 to 2024. The statute doesn't tell us to look all the way back to 1999 when he was committed just that 1 year difference. Now, there wasn't a milestone birthday in that year. He was already 60 in 2023. And as to counsel's argument that individuals over 60 inherently even if they haven't shown a general change are less likely to offend. Well, that's true of individuals over 60 as a group. If you take a look at the appendices to Dr. D's report, she actually explains why respondent being over 60 wasn't producing that effect in this case. Individuals over 60 typically have a reduced sex drive. Not, of course, all individuals over 60. And in this case, respondent was still showing an elevated sex drive relative to individuals of his age and circumstance. And as a result, it wasn't reducing his likelihood to reoffend in the way that one might expect. As to progress and treatment, it is true that respondent is in phase three of treatment, but that's phase three of a five phase treatment process. And importantly, as your honors noted a few minutes ago, respondent was showing low motivation to change. And in particular, he did not yet understand what was causing him to offend and how to prevent that. And it's those two factors respondent understanding what causes him to offend and how to stop himself that are ultimately likely to reduce his risk. He needs to have those interventions. He needs to have that support system. He needs to understand what he has to do to stop these urges that cause him to offend. And he just hasn't reached that level in treatment. And because he hasn't reached that level in treatment, he's not seeing a reduction in risk that might make him no longer an SVP. In fact, if you look at the 2024 report, he's in that well above average level of risk that the highest category of risk he can be categorized in. And he's three to four times as likely to offend as the most as the average sex offender. So we're still seeing that tendency towards sexually violent behavior that justifies his commitment. I welcome the court's questions. One of the questions that I have, and it seems to me like it's been somewhat conflated. Respondent is asking for an evidentiary hearing. At that evidentiary hearing, it would be determined whether or not he would be subject to release. That's correct, your honor. So the question is being phrased as if the no probable cause is saying there's no cause to have the hearing. That's not the same thing as saying. After we have the hearing, he still has to stay inside. So that's correct, your honor. The way this works is that the circuit court looks to the 2024 report and determines whether that report creates probable cause to believe he is no longer a sexually violent person. If there is probable cause. Is it determine that or determine there's. There's no reason not to have an evidentiary hearing to make the final conclusion that he's no longer an SVP. Correct, your honor. So the question right now that the question that the circuit court reached is whether there's probable cause. If the circuit court had concluded there was probable cause, then it would have proceeded to an evidentiary hearing where the question would be ultimately is he an SVP and should he be released. But here, because the 2024 report did not even reach the level of probable cause, because it said he was well above average risk. And it said, ultimately, the same things that it said in 2023. He hadn't even met the burden of production to indicate probable cause. And so there was no hearing. So that's the question before the court today is whether that 2024 report produced probable cause.  I had no other questions. Miss space. Do you have anything else? No, your honor. If the court has no further questions, we ask that you affirm the circuit court. Thank you for your argument. I see no other questions. Mr. Vincent, on behalf of the opponent. Do you have any rebuttal argument, sir? I have no rebuttal arguments contained in my initial brief. As far as our position, and we've discussed already. Thank you, your honor. Thank you, Mr. Vincent, and thank you, Miss space for your arguments. The court will take this matter under advisement issue a decision in due course, and we'll now stand in recess.